UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY A. HAGLUND,

    Plaintiff,

v.                                           Case No. 1:17-cv-586
                                             Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff alleged a disability onset date of October 2, 2013. PageID.258. Plaintiff identified his disabling conditions as: cirrhosis of the liver; hepatic encephalopathy; sleep apnea; and reactive hypoglycemia. PageID.262. Prior to applying for DIB and SSI, plaintiff completed the 12th Grade, a semester of college, and Microsoft certifications. PageID.74, 263-264. He had past employment as a charge account clerk, data entry clerk, game tester/customer service at a software company, a shipping/receiving clerk, inventory clerk, press operator, industrial truck driver, and sales attendant. PageID.82-84, 264. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 31, 2016. PageID.43-62. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

# I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 2, 2013, and that he met the insured status of the Social Security Act through June 30, 2018. PageID.45.

At the second step, the ALJ found that plaintiff had severe impairments of: cirrhosis of the liver secondary to alcohol abuse; fatty liver; hypoglycemia; history of hepatic encephalopathy; status post gallbladder removal; morbid obesity; sleep apnea; and mood disorder. PageID.45-46. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.47.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally climb and balance. The claimant also requires convenient access to a restroom, which is defined as a restroom being on the premises and within reasonable access. Additionally, the claimant is limited to performing simple work, and he cannot perform fast-paced work.

PageID.49. The ALJ also found that plaintiff was not capable of performing any past relevant work. PageID.60.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.60-61. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations in the national economy such as light assembler (14,000 jobs in the State of Michigan), packager (6,300 jobs in Michigan), and line attendant (4,800 jobs in Michigan). PageID.61. Accordingly, the ALJ determined that

plaintiff has not been under a disability, as defined in the Social Security Act, from October 2, 2013 (the alleged onset date) through March 31, 2016 (the date of the decision). PageID.61-62.

### III. DISCUSSION

Plaintiff set forth one issue on appeal:

**The ALJ's residual functional capacity (RFC) determination is unsupported by substantial evidence because the ALJ incorrectly discounted the opinions of all three of plaintiff's treating physicians.**

While plaintiff frames his claim as involving the RFC, he is actually contesting the ALJ's evaluation of three treating physicians. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the

opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### A. Dr. Mathur

The ALJ addressed Dr. Mathur's opinion as follows:

In May 2014, Dr. Mathur completed a medical assessment form regarding the claimant's cirrhosis. On this form, Dr. Mathur reported that the claimant's impairments met the requirements of listing 5.05. Furthermore, Dr. Mathur checked a box to indicate that the claimant's symptoms were likely to "constantly" interfere with the attention and concentration needed to perform even simple work tasks during a typical workday. Dr. Mathur also marked boxes advising that the claimant would be unable to be exposed to detailed or complicated tasks, strict deadlines, fast-paced tasks, workplace hazards, close interaction with supervisors or coworkers, or public contact. Moreover, Dr. Mathur suggested that the claimant could only sit for less than two hours, and stand or walk for less than two hours in an eight-hour workday. Dr. Mathur also indicated that the claimant could only occasionally lift less than ten pounds, and that he could never lift ten pounds or more. Additionally, Dr. Mathur indicated that the claimant would require approximately nine unscheduled breaks per workday, and that he could be expected to be absent from work more than four days per month. Despite these proposed limitations, Dr. Mathur assigned the claimant a fair prognosis for improvement (Ex. 2F).

Statements that a claimant is "disabled" or "unable to work," or the like, are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (SSR 96-5p). The undersigned gives little weight to Dr. Mathur's opinion because it is inconsistent with the medical evidence and the record as a whole, including the claimant's history of improvement

6

with consistent treatment and medication usage, the clinical examination findings of other providers, and the claimant's reported activities of daily living. Indeed, Dr. Mathur's opinion is also inconsistent with his own treatment notes, which do not include any narrative statements or clinical examination findings to corroborate the substantial limitations he has proposed, such as his suggestion that the claimant could only stand, walk, and sit for less than two hours each in an eight-hour workday. As such, it appears that Dr. Mathur may have relied quite heavily on the claimant's subjective report of symptoms and limitations, and that he may have uncritically accepted as true most, if not all, of what the claimant reported. Yet, as discussed above, there exist good reasons for questioning the full extent of the claimant's alleged limitations.

PageID.56-57.

The Court concludes that the ALJ did not err in evaluating Dr. Mathur's "Cirrhosis/Liver Disease Medical Assessment Form." PageID.343-347. This check-box form contains no information to support the extreme restrictions identified by the doctor. In the few places where the doctor was asked to provide a narrative explanation, he did not include such a narrative. As this Court has previously stated, "ALJs are not bound by conclusory statements of doctors, particularly where they appear on 'check-box forms' and are unsupported by explanations citing detailed objective criteria and documentation." *Laporte v. Commissioner of Social Security*, No. 1:15-cv-456, 2016 WL 5349072 at *7 (W.D. Mich. Sept. 26, 2016). *See Pelak v. Commissioner of Social Security*, No. 1:16-cv-198, 2016 WL 6694477 at *7 (W.D. Mich. Nov. 15, 2016) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)). *See also Walters*, 127 F.3d at 530 (noting that a treating physician's failure to support his opinions by "detailed, clinical, diagnostic evidence . . . would be a sufficiently valid reason not to accept the opinions"). The ALJ did not err in rejecting that opinion for lack of supporting medical evidence. Accordingly, plaintiff's claim of error will be denied.

**B.     Dr. Segovia**

The ALJ addressed Dr. Segovia's opinion as follows:

> In January 2016, Dr. Segovia completed a physical residual functional capacity questionnaire form. On this form, Dr. Segovia checked boxes to indicate that the claimant could only sit for about two hours, and stand and walk for less than two hours in an eight-hour workday. Dr. Segovia also noted that the claimant would require the abilities to elevate his legs at all times, alternate positions at will, and take unscheduled work breaks. Furthermore, Dr. Segovia reported that the claimant could frequently lift less than ten pounds, occasionally lift ten pounds, and rarely lift twenty pounds. Dr. Segovia also advised that the claimant could only occasionally stoop and bend, and that he could rarely crouch, squat, climb ladders, or climb stairs. Dr. Segovia concluded that the claimant was likely to be absent from work more than four days per month as a result of his impairments or treatment (Ex. 10F). Although Dr. Segovia is the claimant's treating hepatologist, the undersigned gives little weight to her opinion because it is inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment, the clinical examination findings of other providers, and the claimant's reported activities of daily living. Dr. Segovia's opinion is also inconsistent with her own treatment notes, which suggest a generally improving course of symptomatology, and do not include any significant clinical examination findings to corroborate the substantial limitations she has proposed, such as her suggestions that the claimant could only sit, stand, and walk for less than two hours each in an eight-hour workday; that the claimant would require the ability to elevate his legs at all times; or that the claimant would likely be absent from work more than four days per month. Based on such inconsistencies, it appears that Dr. Segovia may have relied quite heavily on the claimant's subjective report of symptoms and limitations, and that she may have uncritically accepted as trne most, if not all, of what the claimant reported. As discussed above, though, there exist good reasons for questioning the full extent of the claimant's alleged limitations.

PageID.57.

Similarly, Dr. Segovia completed a two-page check-box "Physical Residual Functional Capacity Questionnaire" which provided no narrative to support the extreme restrictions assigned to plaintiff. PageID.784-785. The ALJ did not err in rejecting that opinion for lack of supporting medical evidence. *See Walters*, 127 F.3d at 530; *Pelak*, 2016 WL 6694477 at *7; *Laporte*, 2016 WL 5349072 at *7. Accordingly, plaintiff's claim of error will be denied.

### C. Dr. Carroll

The ALJ addressed Dr. Carroll's opinion as follows:

In January 2016, Jeff Carroll, Ph.D., completed a mental residual functional capacity questionnaire form. On this form, Dr. Carroll checked boxes to indicate that the claimant had "no useful ability to function" in his abilities to understand, remember, and carry out detailed instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and workweek without intenuptions from psychologically-based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Carroll also reported that the claimant was "unable to meet competitive standards" in his abilities to remember work-like procedures; maintain attention for two hour segments; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; be aware of normal hazards and take appropriate precautions; set realistic goals or make plans independently of others; deal with the stress of skilled and semiskilled work; adhere to basic standards of neatness and cleanliness; travel in unfamiliar places; and use public transportation. Dr. Carroll further indicated that the claimant was "seriously limited" in every other area listed on this form. Furthermore, Dr. Carroll advised that the claimant was likely to be absent from work more than four days per month as a result of his impairments or treatment. Dr. Carroll also assigned the claimant a poor-to-guarded prognosis for improvement. Notably, Dr. Carroll acknowledged that his responses on this form were based in part on consideration of the claimant's liver disease (Ex. 12F).

Once again, statements that a claimant is "disabled" or "unable to work," or the like, are not medical opinions but are administrative findings dispositive of a case, which can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (SSR 96-5p ). The undersigned gives little weight to Dr. Carroll's opinion because it is inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment, Dr. Scott's neuropsychological evaluation, the mental status examination findings of other providers, and the claimant's reported activities of daily living. Furthermore, Dr. Carroll's opinion is without substantial support from his own treatment notes, which do not reflect such significant symptomatology, and generally note either minimal or unremarkable mental status examination findings. Therefore, it appears that Dr. Carroll may also have relied quite heavily on the claimant's subjective report of symptoms and limitations, and that he may have uncritically accepted as true most, if not all, of what the claimant reported. Again, though, there exist good reasons for questioning the full extent of the claimant's alleged limitations. The undersigned also stresses Dr. Carroll 's acknowledgement

9

that he based his opinion, at least in part, on consideration of the claimant's liver disease, which is an area outside both his expertise as well as the scope of his treating relationship.

PageID.58-59.

Dr. Carroll completed a five-page check-box "Mental Residual Functional Capacity Questionnaire." PageID.793-797. This questionnaire includes some brief narrative explanations which the ALJ has deciphered.[1] However, the doctor's cryptic explanations are not sufficient to support the extreme limitations assigned to plaintiff, which include multiple areas in which plaintiff has "no useful ability to function." The ALJ did not err in rejecting that opinion for lack of supporting medical evidence. *See Walters*, 127 F.3d at 530; *Pelak*, 2016 WL 6694477 at *7; *Laporte*, 2016 WL 5349072 at *7. Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: September 24, 2018          /s/ Ray Kent
                                   United States Magistrate Judge

---

[1] The Court notes that it is difficult, if not impossible, to read some of the doctor's handwriting.